# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TWISTED VENTURES, LLC,                    )
a Delaware limited liability company,      )
                                           )
        Plaintiff,                         )
                                           )
        v.                                 )        C.A. No. N15C-02-030 CLS
                                           )
SANDRA CHANDLER and AUNTIE                 )
ANNE'S SOFT PRETZELS #104,                 )
INC., a Delaware corporation,              )
                                           )
        Defendants.                        )

## ORDER

On this 16th day of August, 2016, and upon Plaintiff's, Twisted Ventures, LLC, ("Twisted Ventures" or "Plaintiff") Motion for Summary Judgment, it appears to the Court that:

This action arises out of the purchase and sale of an Auntie Anne's Soft Pretzel franchise located in the Prices Corner Shopping Center in Wilmington, Delaware, effectuated through a written asset sale agreement entered into by and between Twisted Ventures, as the buyer, and Sandra Chandler ("Ms. Chandler") and Auntie Anne's Soft Pretzels #104, Inc. (the "Franchise") (collectively, the "Defendant"), as the seller, on January 19, 2013 (the "Contract"). In its complaint, Plaintiff alleges that Ms. Chandler falsely and fraudulently represented the Franchise's net 2012 sales to its President, Jason Yancoski ("Mr. Yancoski"), which constituted a breach of warranty by Defendant and damaged Plaintiff.

On April 12, 2016, Plaintiff moved for summary judgment on its breach of warranty claims, arguing that it is undisputed that Defendant warranted under the Contract that she had provided an accurate 2012 sales figure to Plaintiff and that Defendant supplied a false sales figure in a text message. Plaintiff further argues that it is undisputed that it relied on the false sales figure when it went to closing on the $350,000 purchase price and, thus, Plaintiff paid $44,750 more than it would have paid had the correct sales figure been supplied by Defendant based on the formula it used to generate a spreadsheet of possible purchase prices to offer.

Defendant argues in opposition that she did not warrant under the Contract that she had provided an accurate 2012 sales figure to Plaintiff, pointing out that Plaintiff fails to cite to any part of the Contract containing such a warranty, and that Plaintiff did not rely on the 2012 sales figure, because the text message was sent after that Contract was signed. Further, Defendant vehemently opposes Plaintiff's attempt to use Mr. Yancoski's formula and spreadsheet as the basis for computing its damages.

As to the warranty(s) alleged to have been breached by Defendant when Ms. Chandler sent the text message containing the erroneous 2012 sales figure to Mr. Yancoski, Plaintiff directs the Court to paragraphs 4.I and 4.P of the Contract. Paragraph 4.I states:

> "No representation or warranty by Seller in this Agreement, nor any exhibit, statement or certificate furnished or to be furnished by Seller

2

pursuant to this Agreement, or in connection with the actions contemplated hereby, contains or shall contain any untrue statement or omit a material fact necessary to make the statements contained therein not misleading or incomplete.[1]

Paragraph 4.P states, in pertinent part:

> The Seller warrants and represents that all of the financial statements/compilations, tax returns, books and all other records pertaining to Seller's business operations/use on the Property, or otherwise provided to Buyer by Seller which have been or will be exhibited to Buyer or any of Buyer's agents, are absolutely true and correct, including without limitations thereto, all bills, invoices and other evidence of various costs and income relating to the Seller's business.[2]

The Court may grant summary judgment if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[3] All facts are viewed in a light most favorable to the non-moving party.[4] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[5] Summary judgment should be denied "if it seems desirable to inquire more thoroughly into the facts or to clarify the application of the law."[6]

While it is undisputed that on January 19, 2013, the Contract was executed by the Parties, and that on January 19, 2013, Ms. Chandler sent Mr. Yancoski a

---

[1] Pl.'s Mot. for Partial Summ. J., Exh. A, Asset Sales Agreement ¶4.I.
[2] *Id.* at ¶4.P.
[3] Super. Ct. Civ. R. 56(c).
[4] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[5] *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[6] *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.*, 2002 WL 1335360, at *2 (Del. Super. June 13, 2002).

text message containing erroneous sales data for 2012, the sequence of events constitutes a disputed fact and, thus, whether Plaintiff relied on the sales figure in the text message constitutes an issue of fact. Accordingly, though Plaintiff points to paragraphs 4.I and 4.P of the Contract as constituting warranties allegedly breach by Defendant when she sent the text message, it has failed to demonstrate that the text message at issue undisputedly meets either the categorical or temporal parameters of the clauses cited.[7]

Finally, even if Plaintiff had met its burden of showing that there is no dispute as to any material fact as to Defendant's alleged breach(es) of warranty, Plaintiff has not demonstrated that it is entitled to the relief sought in its motion— namely, damages in the amount of $44,750. As a way of quantifying the reasonable expectations of the parties to a contract where one party is in breach, "[e]xpectation damages are calculated as the amount of money that would put the non-breaching party in the same position that the party would have been in had the breach never occurred."[8] Thus, "[t]he measure of damages is the loss actually sustained as a result of the breach of the contract."[9]

Plaintiff contends that it would not have paid more than $305,250 if Defendant had supplied the true 2012 sales figure. However, its argument relies on

---

[7] In fact, paragraph 4.I on its face does not even appear to create any warranty at all.

[8] *Cobalt Operating, LLC v. James Crystal Enters., LLC*, 2007 WL 2142926, at *29 (Del. Ch. July 20, 2007).

[9] *Del. Limousine Serv., Inc. v. Royal Limousine Serv., Inc.*, 1991 WL 53449, at *3 (Del. Super. Apr. 5, 1991).

two assumptions that have not been shown: (i) that Defendant was either contractually bound to supply Plaintiff with the accurate 2012 sales figure or would have in any event, and (2) that Defendant would have accepted Plaintiff's offer of $305,250. Additionally, Plaintiff's reliance on *Cobalt Operating, LLC v. James Crystal Enterprises, LLC* is undercut by its failure to present any expert testimony or evidence as to the appropriate valuation of the Franchise to substantiate Mr. Yancoski's subjective valuation efforts realized by a "formula" he developed. Under the circumstances, it is woefully inadequate—and may not be relevant—to present the Court with a homespun spreadsheet purportedly created and used by a party to calculate possible offers to purchase a franchise and ask the Court to round up here and round down there in order to arrive at an appropriate measure of damages *ex ante*.

Accordingly, for the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

/s/Calvin L. Scott
The Honorable Calvin L. Scott, Jr.

cc: Prothonotary

5